## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30300
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
December 6, 2013
Lyle W. Cayce
Clerk

LEXINGTON INSURANCE COMPANY,

                              Plaintiff - Appellant

v.

ST. BERNARD PARISH GOVERNMENT,

                              Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
U.S.D.C. No. 2:11-CV-1865

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

    Lexington Insurance Company ("Lexington") brought a declaratory judgment action against St. Bernard Parish Government ("St. Bernard") regarding the interpretation of an insurance policy. The district court entered declaratory judgment in favor of St. Bernard, and Lexington timely appealed. We AFFIRM the district court's interpretation of the policies in question as it applies to the duty to defend but REMAND for modifications to the judgment

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

consistent herewith.

## I.

After Hurricane Katrina flooded virtually every structure in St. Bernard parish, St. Bernard passed an ordinance condemning 5731 structures in disrepair, thereafter demolishing many of them. In response, seventy property owners sued St. Bernard in various Louisiana state court actions alleging that St. Bernard had wrongfully demolished or damaged their properties.

St. Bernard sought defense and indemnity for the state court actions under three consecutive Lexington Insurance Policies (the "Policies") in effect from February 2008 to February 2011. The Policies provided coverage for "property damage" and "personal and advertising injury" arising out of an "occurrence," and contained a $10,000,000 per occurrence and aggregate limit, subject to a $250,000 retained limit. Lexington did not assume the defense of St. Bernard in the underlying actions. Instead, it brought the instant action, requesting a declaratory judgment that the Policies' $250,000 retained limit applied separately to each alleged demolition or property damage asserted in the underlying actions. Under that theory, no defense would be owed as no property had a value exceeding $250,000.

The case proceeded to a bench trial on stipulated facts with two disputed issues of law presented for the district court's resolution: (1) "Whether the intentional demolition of the subject properties constitutes an 'occurrence' under the Lexington Policies"; and (2) "To the extent there has been an 'occurrence,' whether the demolition or destruction of each separate property, which took place at individual times and locations, constitutes a separate 'occurrence' under the Lexington Policies such that the $250,000 per occurrence retained limit must be exhausted for each separate property." The district court resolved both issues in favor of St. Bernard.

No. 13-30300

II.

"A district court's interpretation of an insurance contract or provision is a question of law that we review de novo." *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir.), *cert. denied*, 132 S. Ct. 420 (2011). Since this is a diversity action, we apply Louisiana substantive law. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009). In construing an insurance policy under Louisiana law, the following general rules of interpretation apply:

> Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. . . . Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
>    The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage.

*Elliot v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1254 (La. 2007) (emphasis omitted) (quoting *Reynolds v. Select Props.*, 634 So. 2d 1180, 1183 (La. 1994)).

Lexington first argues that the district court incorrectly determined that the injuries alleged by the state court plaintiffs were "personal and advertising injury" occurrences as defined in the Policies. The Policies define a personal and advertising injury as arising out of, *inter alia*, "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." The sole contention between the parties on this issue is the function of the phrase, "*by or on behalf of its owner, landlord or lessor.*" Lexington argues that the phrase modifies the wrongful acts, such that the eviction or invasion of right of occupancy must occur "by or on behalf of" the "owner, landlord or lessor" of the property. Conversely, St. Bernard contends

3

that the phrase modifies "that a person occupies," such that the injured party must rightfully occupy the property "by or on behalf of its owner, landlord or lessor." The district court found the phrase ambiguous and construed it in favor of coverage.[1]

We agree with the district court's construction. The Louisiana Supreme Court has not expressly interpreted this language, and other courts have applied both parties' constructions, with many interpreting the language in favor of the insured because it is ambiguous.[2] Indeed, when construing this same language under Mississippi law, we previously held that "the phrase reasonably may be interpreted to mean that, in order for there to be coverage, the victim must be occupying the [property] . . . in the interest of' the owner of the [property]." *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 620–21 (5th Cir. 2001). We concluded that Mississippi courts would likely apply this meaning "in favor of coverage, either as their own interpretation or in accordance with Mississippi law governing the construction of ambiguous insurance contracts." *Id.* at 621. Applying Louisiana's general rules of insurance policy interpretation to the Policies here compels no different result:

---

[1] The underlying lawsuits against St. Bernard were brought by owners of the affected properties for actions taken by St. Bernard; it is undisputed that St. Bernard was not the owner, landlord, or lessor of the properties, or acting on behalf of such persons. Therefore, under Lexington's proposed construction, the Policies would not be triggered because the acts of condemnation and demolition would not be "personal and advertising" injuries.

[2] *Compare Chimera Inv. Co. v. State Farm Fire & Cas. Co.*, 268 F. App'x 793, 797 (10th Cir. 2008) (unpublished) (applying Utah law to reach the interpretation argued by Lexington), *and Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 94 (Alaska 2008) (applying Alaska law to reach the interpretation argued by Lexington), *with Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med.*, 191 F.3d 959, 963 (8th Cir. 1999) (applying Missouri law to find the language ambiguous and construing in favor of the insured), *New Castle Cnty. v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 347–51 (3d Cir. 1999) (applying Delaware law to find the language ambiguous and construing in favor of the insured), *and United States v. Sec. Mgmt. Co.*, 96 F.3d 260, 265 (7th Cir. 1996) (noting, in dicta, that the language at issue "refine[s] the nature of the prerequisite 'right' of private occupancy").

the language is, at best, ambiguous, with at least one reasonable interpretation being that occupancy must occur by or on behalf of the property's owner, landlord, or lessor. Accordingly, the definition of a personal and advertising injury occurrence is properly construed in favor of St. Bernard. *See Elliot*, 949 So. 2d at 1254 (ambiguity is to be construed in favor of coverage).

Lexington next argues that the district court improperly held that "the condemnation and demolition activities . . . constitute a series of related occurrences for which a single retained limit applies" under the Policies. With regard to personal and advertising injuries, the Policies provide that "[a]ll damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants." The Policies also specify that "[t]he retained limit . . . [a]pplies separately to each and every occurrence . . . or series of continuous, repeated, or related occurrences." Accordingly, if the acts of condemnation and demolition alleged in the underlying complaints against St. Bernard arose from related or repeated acts, they are deemed to arise out of a single occurrence to which the Policies' retained limit would apply only once. Alternatively, to the extent that the alleged acts of condemnation and demolition were instead multiple occurrences, the Policies' retained limit would still apply only once if they constituted a "series of continuous, repeated, or related occurrences." Lexington argues that neither avenue applies because the acts alleged in the complaint are not related.[3] We disagree.

---

[3] Lexington also devotes much of its briefing to asserting that this case is governed by *Lombard v. Sewerage & Water Bd.*, 284 So. 2d 905 (La. 1973), and cases applying it. As thoroughly explained by the district court, *Lombard* is inapposite because the Lexington Policies differ materially from the policy construed in *Lombard*. *See Lexington Ins. Co. v. St. Bernard Parish Gov't*, No. 2:11-CV-1865, 2013 WL 55908, at *7–9 (E.D. La. Jan. 23, 2013).

"Related" is not defined in the Policies and has not been defined in this context by Louisiana courts. However, we are guided by the rule that "[w]ords and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning." *Elliot*, 949 So. 2d at 1254. "Related" has a plain meaning of "connected by reason of an established or discoverable relation." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1050 (11th ed. 2007). In the insurance policy context, courts have recognized the broad meaning of "related" and have held that it covers logical or causal connections between acts or occurrences. *See, e.g., Gregory v. Home Ins. Co.*, 876 F.2d 602, 604–06 (7th Cir. 1989) ("[T]he common understanding of the word 'related' covers a very broad range of connections, both causal and logical."); *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451, 456–58 (Ariz. 1987) (noting that related can mean either a logical or a causal connection, but ultimately concluding, "series of related incidents" meant that the incidents were "causally related"); *Bay Cities Paving & Grading v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1271–75 (Cal. 1993) (interpreting "series of related acts," and holding that "the term 'related' as it is commonly understood and used encompasses both logical and causal connections").

We likewise recognize the broad meaning of the term and hold that the acts alleged in the underlying actions are related because they all resulted from St. Bernard's ordinance condemning those properties that remained in disrepair following Hurricane Katrina. The fact that the properties in the underlying action were demolished at different times, in varying degrees, and at different locations, does not mean that these acts are not related. The Policies explicitly recognize that acts can be related "regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants." Furthermore, the Policies contemplate that occurrences in a series, i.e., at different times, can be related. Because the multiple acts of

6

condemnation and demolition alleged in the underlying complaints are related such that they arose either from a single occurrence or a series of related occurrences, the Policies' $250,000 retained limit applies once to the alleged acts.[4]

Lastly, Lexington urges that the district court's order and judgment are premature and overbroad because they extend to the duty to indemnify in declaring that "St. Bernard Parish Government is entitled to coverage by the Lexington insurance policies for damages caused by St. Bernard." We agree. "An insurer's duty to defend suits on behalf on an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." *Martco*, 588 F.3d at 872 (applying Louisiana law) (citing *Elliot*, 949 So. 2d at 1250). The former is governed by the "Eight Corners Rule," in which the allegations of the underlying complaint are applied to the policy, without resort to extrinsic evidence, to determine whether the pleadings against the insured disclose a *possibility of liability* under the policy. *Martco*, 588 F.3d at 872–73. Conversely, whether the insurer has a duty to indemnify a claim turns on facts beyond those alleged in the complaint against the insured. *Id.* To make this latter determination, a court applies the policy "to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." *Id.* at 877. Accordingly, Louisiana law generally provides that the issue of indemnity is premature and non-justiciable until the underlying

---

[4] Lexington also argues that "[r]egardless of how many retained limits apply in any given policy period, St. Bernard must pay at least one for each policy from which it seeks coverage." This issue was neither raised in Lexington's complaint for declaratory judgment, submitted to the district court for resolution at trial, nor ruled on by the district court. Because the issue was not raised in the trial court, we will not consider it for the first time on appeal. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 424–25 (5th Cir. 2004).

No. 13-30300

issue of liability is resolved and the defendant is cast in judgment. *See Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987); *Mossy Motors, Inc. v. Cameras Am.*, 898 So. 2d 602, 607 (La. Ct. App. 4th Cir. 2005).

In this case, the arguments presented dealt only with the pleadings in the underlying actions; evidence regarding St. Bernard's liability was not before the court nor was it argued that the indemnity issue was somehow justiciable despite the fact that the issue of St. Bernard's liability had yet to be resolved. St. Bernard did not file a counter-claim seeking its own declaration. In short, the indemnity issue is non-justiciable under the pleadings before the district court.[5] The judgment therefore should be modified to reflect only a declaration that Lexington owes a duty to defend St. Bernard under the current pleadings (as of the time of the original trial) in the "Underlying Lawsuits" as defined in the complaint.

AFFIRMED as MODIFIED and REMANDED for entry of judgment consistent herewith.

---

[5] Undoubtedly, Lexington's somewhat confusing complaint and piecemeal approach to the issues fostered confusion as to what it was seeking. However, whether a case is justiciable at all implicates Article III jurisdiction questions and, thus, cannot be waived. *See Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758, 1767 n.2 (2010); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 88 (5th Cir. 2011). This point is not merely academic – if St. Bernard is never held liable to the plaintiffs in the "Underlying Lawsuits," it will never suffer any harm requiring redress with respect to Lexington's indemnity obligation. Thus, the indemnity claim is not yet ripe.